1
2
3
4
5
6
7
8
9
10
11
12
13

14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CONSENT DECREE |
| | ) | |
| AMERICAN SEAFOODS COMPANY | ) | |
| LLC and PACIFIC LONGLINE | ) | |
| COMPANY LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

15
16
17

18

19
20
21
22

23

1

<u>TABLE OF CONTENTS</u>

2   I.     JURISDICTION AND VENUE ............................................................................- 3 -

3   II.    APPLICABILITY ..............................................................................................- 4 -

4   III.   DEFINITIONS....................................................................................................- 4 -

5   IV.    CIVIL PENALTY ..............................................................................................- 5 -

6   V.     EFFECTIVE RETIREMENT OF CONSUMPTION ALLOWANCES.............- 6 -

7   VI.    COMPLIANCE REQUIREMENTS ...................................................................- 8 -

8   VII.   REPORTING REQUIREMENTS.....................................................................- 10 -

9   VIII.  STIPIULATED PENALTIES ...........................................................................- 13 -

10  IX.    FORCE MAJEURE ..........................................................................................- 15 -

11  X.     DISPUTE RESOLUTION ...............................................................................- 15 -

12  XI.    INFORMATION COLLECTION AND RETENTION ....................................- 17 -

13  XII.   FAILURE OF COMPLIANCE .........................................................................- 17 -

14  XIII.  EFFECT OF SETTLEMENT / RESERVATION OF RIGHTS .......................- 18 -

15  XIV.   COSTS ..............................................................................................................- 18 -

16  XV.    NOTICES .........................................................................................................- 19 -

17  XVI.   EFFECTIVE DATE...........................................................................................- 19 -

18  XVII.  RETENTION OF JURISDICTION ..................................................................- 20 -

19  XVIII. MODIFICATION ..............................................................................................- 20 -

20  XIX.   TERMINATION ...............................................................................................- 21 -

21  XX.    PUBLIC PARTICIPATION .............................................................................- 21 -

22  XXI.   SIGNATORIES/SERVICE ..............................................................................- 21 -

23  XXII.  INTEGRATION ................................................................................................- 22 -

24  XXIII. FINAL JUDGMENT ………………………………………………………-22-

25

1    WHEREAS, Plaintiff United States of America, on behalf of the United States

2    Environmental Protection Agency (EPA), has filed a complaint in this action pursuant to Section

3    113(b) of the Clean Air Act, 42 U.S.C. 7413(b), alleging that Defendants American Seafoods

4    Company LLC and Pacific Longline Company LLC (Defendants), have violated regulations

5    promulgated by EPA pursuant to Title VI of the Clean Air Act (CAA), specifically regulations

6    set forth in 40 C.F.R. Part 82, Subparts A and F;

7    WHEREAS, Defendants deny the allegations in the Complaint, and by entering into this

8    Consent Decree do not admit any liability to the United States or to any third party arising out of

9    the occurrences or violations alleged in the Complaint; and

10    WHEREAS, the United States and Defendants (the Parties) recognize, and the Court by

11    entering this Decree finds, that this Decree has been negotiated by the Parties in good faith and is

12    fair and reasonable and, furthermore, that settlement of this action is in the public interest and

13    entry of this Decree without further litigation is the most appropriate means of resolving this

14    matter;

15    NOW THEREFORE, without the adjudication or admission of any issue of fact or law

16    except as provided in Section I, and with the consent of the Parties, it is hereby ADJUDGED,

17    ORDERED, and DECREED as follows:

18    ## I.   JURISDICTION AND VENUE

19    1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28

20    U.S.C. §§ 1331, 1345, and 1355; Section 113(b) and (c) of the CAA, 42 U.S.C. § 7413(b); and

21    over the Parties.

22    2.    Venue is proper in this District pursuant to Section 113(b) of the CAA, 42 U.S.C.

23    § 7413(b) and 28 U.S.C. §§ 1391(b) and 1395(a), because Defendants conduct business and

24    maintain their corporate headquarters in this judicial district.  For purposes of this Decree, or any

25    action to enforce this Decree, Defendants consent to this Court's jurisdiction over this Decree

26    and any such action over Defendants, and Defendants consent to venue in this judicial district.

3.     Solely for purposes of this Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Section 608 of the CAA, 42 U.S.C. § 7671g, and 40 C.F.R. Part 82, Subparts A and F.

## II.  APPLICABILITY

4.     The obligations of this Decree apply to and are binding upon the United States, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

5.     In any action to enforce this Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Decree.

## III.  DEFINITIONS

6.     Except as otherwise set forth herein, terms used in this Decree that are defined in Title VI of the CAA, 42 U.S.C. § 7401 *et. seq.*, and 40 C.F.R. Part 82, Subparts A and F shall have the meanings contained therein.  Whenever the terms set forth below are used in this Decree, the following definitions shall apply:

a.     "Complaint" shall mean the complaint filed by the United States in this action;

b.     "Consent Decree" or "Decree" shall mean this Decree and all appendices hereto;

c.     "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day;

d.     "Defendants" shall mean American Seafoods Company LLC and Pacific Longline Company LLC;

e.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

f.   "Effective Date" shall mean the date upon which this Decree is entered by the Court or a motion to enter this Decree is granted, whichever occurs first, as recorded on the Court's docket;

g.   "Facility" shall mean the following vessels owned or operated by the Defendants: the *Highland Light*, the *Northern Jaeger*, the *Ocean Rover*, the *American Triumph*, the *American Dynasty*, and the *Katie Ann*;

h.   "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

i.   "Non-Affiliated Third Party" shall mean a person or entity without any ownership interest in or other legal ownership relationship to the Defendants, including but not limited such ownership interest or other legal ownership relationship as that of a parent, subsidiary, or sibling corporation.

j.   "Non-ODS Refrigerant" shall mean a refrigerant substance that is not listed as a controlled substance in 40 C.F.R. Part 82, Subpart A, Appendices A or B, or as an ozone-depleting chemical in 40 C.F.R. Part 82, Subpart A, Appendix F;

k.   "Section" shall mean a portion of this Decree identified by a Roman numeral; and

l.   "United States" shall mean the United States of America.

### IV.  CIVIL PENALTY

7.   Within 30 Days after the Effective Date of this Decree, Defendants shall together pay the sum of **$700,000 (seven-hundred thousand dollars)** as a civil penalty in accordance with the payment instructions set forth in Paragraph 8.  If any portion of the civil penalty is past due to the United States following expiration of the 30 Day period, Defendants shall pay, on the past due amount, interest accruing from the Effective Date of this Decree through the date of

1  payment at the rate specified in 28 U.S.C. § 1961.  Interest payments under this Paragraph shall

2  be in addition to any stipulated penalty due in accordance with this Decree.

3         8.      Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer

4  (EFT) to the U.S. Department of Justice in accordance with written instructions to be provided to

5  Defendants, following lodging of this Decree.  Defendants shall pay the civil penalty to the

6  Financial Litigation Unit of the U.S. Attorney's Office for the Western District of Washington,

7  700 Stewart Street, Suite 5220, Seattle, WA 98101-1271, (206) 553-1866.  At the time of

8  payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction

9  record, together with a transmittal letter, to the United States in accordance with Section XV of

10  this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

11                 U.S. EPA Cincinnati Finance Office

12                 26 Martin Luther King Drive

13                 Cincinnati, Ohio  45268

14  The transmittal letter shall state that the payment is for the civil penalty owed pursuant to the

15  Decree in *United States v. American Seafoods Company LLC, et al.*, and shall reference the civil

16  action number assigned to this case and DOJ case number 90-5-2-1-10161

17         9.      Defendants shall not deduct any penalties paid under this Decree pursuant to this

18  Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

19  **V.  EFFECTIVE RETIREMENT OF CONSUMPTION ALLOWANCES**

20         10.      As partial consideration for this settlement, in December of 2011, Defendants

21  purchased calendar year 2011 consumption allowances for 70,000 kilograms of the refrigerant

22  known as R-22.  By their signatures to this Decree, Defendants certify that they did not use or

23  sell those allowances, thereby ensuring that they would not be purchased or used by any other

24  party, nor used by any person to produce or import an equivalent quantity of R-22 or any other

25  refrigerant into the United States.

# VI.  COMPLIANCE REQUIREMENTS

11.     Defendants shall not operate the *Highland Light* with an ODS main refrigeration system.  Defendants shall remove all of the refrigeration appliances from the *Highland Light's* main refrigeration system (including the plate freezers, compressors, and cargo hold coils) by December 31, 2016.  If Defendants do not remove all of the refrigeration appliances from the *Highland Light's* main refrigeration system (including the plate freezers, compressors, and cargo hold coils) by December 31, 2016, they shall pay a stipulated penalty of $133,000.

12.     Defendants shall convert the main refrigeration systems of the following vessels to operate using a Non-ODS Refrigerant by December 31, 2015: the *Northern Jaeger*, the *Ocean Rover*, the *American Triumph*, the *American Dynasty*, and the *Katie Ann*.  If Defendants do not convert all five of these vessels to operate using a non-ODS refrigeration by December 31, 2015, Defendants shall pay a stipulated penalty of $100,000.  If Defendants have not, by December 31, 2016, converted the main refrigeration systems of each vessel to operate using a Non-ODS Refrigerant, they shall pay a civil penalty of $133,000 for each such vessel that remains unconverted on that date.

13.     Defendants shall be relieved of the obligation to convert the main refrigeration system for any vessel identified in Paragraph 12 by December 31, 2016, if they convey ownership of that vessel to a Non-Affiliated Third Party prior to December 31, 2016, except that Defendants may convey no more than three such unconverted vessels, and they shall pay the $133,000 civil penalty set forth in Paragraph 12 for each unconverted vessel conveyed.

14.     In addition to the stipulated penalties provided for in Paragraph 12, Defendants shall pay a stipulated penalty of $5,000 for each day after December 31, 2016, that any vessel required to be converted to a non-ODS refrigeration system pursuant to this Consent Decree, and not conveyed to a Non-Affiliated Third Party, remains unconverted.

15.     Defendants shall fully implement the comprehensive refrigerant Leak Inspection and Repair Plan (Appendix 1 to this Consent Decree) by February 28, 2013.  The comprehensive

1    refrigerant Leak Inspection and Repair Plan shall apply to each of the following vessels: the

2    *Northern Jaeger*, the *Ocean Rover*, the *American Triumph*, the *American Dynasty*, and the *Katie*

3    *Ann.*  Defendants shall repair all leaks of R-22 identified during its inspection of each of the main

4    refrigeration systems aboard these vessels and shall perform initial and follow-up verification

5    tests in accordance with all requirements for repairs and initial and follow up verification tests

6    established in 40 C.F.R. Part 82, Subpart F.  Defendants shall provide EPA with notice of its

7    anticipated schedule for performance of the activities specified in Appendix 1 within 10 Days of

8    the Effective Date of this Consent Decree. Defendants shall additionally provide via electronic

9    mail to EPA at least 48 hours prior notice of its intention to perform each of the activities

10   specified in Appendix 1 so that EPA may observe such activities.

11          16.     Defendants shall comply with all applicable requirements of Section 608 of the Clean Air

12   Act, 42 U.S.C. 7671g(c), and its implementing regulations at 40 C.F.R. Part 82, Subparts A and F.

13          17.     Where any compliance obligation set forth in the applicable regulations or in this

14   Consent Decree requires Defendants to obtain any federal, state, or local permit, Defendants

15   shall timely submit and complete the appropriate permit applications.

16   **VII.  REPORTING REQUIREMENTS**

17          18.     Defendants shall, no later than 14 Days after completing the conversion of any of

18   the main refrigeration system of any of the Facilities subject to the requirements of this Consent

19   Decree, submit written notification of the conversion to EPA in accordance with Section XV.

20          19.     Defendants shall, in accordance with Section XV, provide written notice to EPA

21   of their intent to sell any of the Facilities subject to the requirements of this Consent Decree at

22   least 30 Days prior to the sale of any such Facility.

23          20.     Defendants shall submit a written report addressing the findings of the Leak

24   Inspection and Repair of each of the vessels subject to the requirements of Paragraph 15.  The

25   written report for each vessel shall be submitted to EPA no later than 60 Days following the

26   completion of the actions required pursuant to Attachment 1 at each vessel and shall specify:

(1) all of the leaks that were detected on the vessel's main refrigeration system, the date of the leak's detection, and the location of the leak; (2) a description of how each detected leak was repaired and the date of the repair; and (3) the dates and results of the initial and all follow-up leak repair verification testing.

21.     No later than January 30 of the years 2013 and 2014, Defendants shall submit to EPA copies of all records required pursuant to 40 C.F.R. § 82.166(k) for each of the Facilities for the previous year.  This requirement shall cease to apply to a Facility after the conversion of its main refrigeration system to a Non-ODS refrigerant.

22.     If Defendants violate, or have reason to believe they may violate, any requirement of this Decree, Defendants shall notify EPA of such violation and its likely duration, in writing, within ten (10) working Days of the Day they first become aware of the violation, with an explanation of the violations' likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report.  Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendants become aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section IX of this Decree (Force Majeure).

23.     Whenever any violation of this Decree or any other event affecting Defendants' performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA orally or by electronic transmission as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraphs.

24.     All reports shall be submitted to the person(s) designated in Section XV of this Decree (Notices).

25.     Each report and written notification submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> "I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

26.     The reporting requirements of this Decree do not relieve Defendants of any recordkeeping or reporting obligations required by the CAA or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

27.     Any information provided pursuant to this Decree may be used by the United States in any proceeding to enforce the provisions of this Decree and as otherwise permitted by law.

## VIII.  STIPULATED PENALTIES

28.     Defendants shall be liable for stipulated penalties to the United States for violations of this Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including payment of civil penalties, compliance requirements, and submission of any required reports or notifications according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

1    29.   <u>Late Payment of Civil Penalty</u>:  If Defendants fail to pay the civil penalty required

2 to be paid under Section IV of this Decree (Civil Penalty) when due, Defendants shall pay a

3 stipulated penalty of **$1,000** per Day for each Day that the payment is late.  Late payment of the

4 civil penalty shall be made in accordance with Section IV.  All transmittal correspondence shall

5 state that any such payment is for late payment of the civil penalty due under this Decree, or for

6 stipulated penalties for late payment, as applicable, and shall include the indentifying

7 information set forth in Section IV.

8    30.   The following stipulated penalties shall accrue per violation per Day for each

9 violation of any of the requirements specified in Paragraph 15, including the requirements of

10 Appendix 1 which are incorporated by reference, and the Reporting requirements specified in

11 Section VI, and for any violation of Paragraph 16:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| **$125** | 1st through 14th Day |
| **$250** | 15th through 30th Day |
| **$750** | 30th Day and beyond |

16    31.   Stipulated penalties shall begin to accrue on the day after performance is due or on

17 the day of the violation, whichever is applicable, and shall continue to accrue until performance

18 is satisfactorily completed or the violation ceases.  If Defendants in good faith timely submit a

19 report required by Section VII of this Decree and EPA determines that a component of the report

20 is deficient, EPA will provide notice in writing of the deficiency and allow Defendants at least

21 20 Days to correct the deficiency.  In this circumstance, stipulated penalties will not begin to

22 accrue until the expiration of the 20-Day period.  However, if the original submitted report was

23 so deficient to constitute a material breach of Defendants' obligations under this Consent Decree,

24 the stipulated penalty shall begin to accrue upon original submission and shall be payable

25 notwithstanding any subsequent submission.

26    32.   Defendants shall pay any stipulated penalty within 30 Days of receiving the

27 United States' written demand.

33.     The United States may in the unreviewable exercise of its discretion, reduce or waive Stipulated Penalties otherwise due it under this Decree.

34.     Stipulated penalties shall continue to accrue as provided in this Section during any Dispute Resolution, with interest on accrued penalties payable and calculated by the rate specified in 28 U.S.C. § 1961, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the Effective Date of the agreement or the receipt of EPA's decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

35.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices as provided in Section IV (Civil Penalty), except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

36.     Defendants shall not deduct Stipulated Penalties paid under this Section in calculating its federal income tax.

37.     Failure by the United States to demand stipulated penalties shall have no effect on the accrual of such penalties.

38.     Nothing herein shall preclude the simultaneous accrual of penalties for separate violations of this Decree.

39.     If Defendants fail to pay stipulated penalties according to the terms of this Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

40.     Subject to the provisions of Section XIII of this Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Decree or Title VI of the CAA, 42 U.S.C. § 7401 *et. seq.* and/or 40 C.F.R. Part 82, Subparts A and F.  Defendants shall be allowed a credit for any stipulated penalties paid against any statutory penalties imposed for such violation.

### IX.  FORCE MAJEURE

41.     A Force Majeure event, for purposes of this Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants or of Defendants' contractors, that delays or prevents the performance of any obligation under this Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise best efforts to fulfill the obligation includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  Force Majeure event does not include Defendants' financial inability to perform any obligation under this Decree.

42.     If any event occurs or has occurred that may delay the performance of any obligation under this Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally to U.S. EPA, Region 10 at 206-553-1200, within 3 Days (72 consecutive hours) of when Defendants first knew that the event might cause a delay.  Within 15 Days of the date of Defendants' initial notice under this Paragraph, Defendants shall provide in writing to the

1    individuals identified in Paragraph 58 and to the Director of the Office of Compliance and

2    Enforcement at EPA Region 10 an explanation and description of the reasons for the delay; the

3    anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the

4    delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay

5    or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure

6    event if it intends to assert such a claim; and a statement as to whether, in the opinion of

7    Defendants, such event may cause or contribute to an endangerment to public health, welfare or

8    the environment.  Defendants shall include with any notice all available documentation

9    supporting the claim that the delay was attributable to a force majeure.  Failure to comply with

10   the above requirements shall preclude Defendants from asserting any claim of Force Majeure for

11   that event for the period of time of such failure to comply, and for any additional delay caused by

12   such failure.  Defendants shall be deemed to know of any circumstance of which Defendants, or

13   any entity controlled by Defendants, knew or should have known.

14          43.     EPA shall make reasonable efforts to notify Defendants within thirty (30) Days in

15   writing of its agreement or disagreement with Defendants' claim of Force Majeure after receipt

16   of the written notice provided by Defendants under Paragraph 42.  If EPA agrees that the delay

17   or anticipated delay is attributable to a Force Majeure event, the time for performance of the

18   obligations under this Decree that are affected by the Force Majeure event may be extended by

19   EPA for such time as is necessary to complete those obligations.  An extension of the time for

20   performance of the obligations affected by the Force Majeure event shall not, of itself, extend the

21   time for performance of any other obligation not affected by the Force Majeure.  EPA will notify

22   Defendants in writing of the length of the extension, if any, for performance of the obligations

23   affected by the Force Majeure event.

24          44.     If EPA does not agree that the delay or anticipated delay has been or will be

25   caused by a Force Majeure event, EPA's position shall be binding, unless Defendants invoke

26   Dispute Resolution under Section X of this Decree within fifteen days after receipt of EPA's

27   written notice.  In any such dispute, Defendants bear the burden of proving, by a preponderance

of the evidence, that the delay or anticipated delay has been or will be caused by a Force Majeure event; that Defendants gave the notice required in this Section; that the duration of the delay or the extension sought was or will be warranted under the circumstances; and that Defendants exercised best efforts to prevent or minimize any delay caused by the Force Majeure event.

## X.  DISPUTE RESOLUTION

45.     Unless otherwise expressly provided for in this Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree.  Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

46.     Any dispute subject to Dispute Resolution under this Decree shall be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the United States a written notice of dispute in accordance with Section XV of this Decree (Notices).  Such notice of dispute shall state clearly the matter and the reason for the dispute. The period of informal negotiations shall not exceed 60 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless within 15 Days Defendants appeal the dispute to the District Court.

## XI.  INFORMATION COLLECTION AND RETENTION

47.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Facility covered by this Decree, at all reasonable times, upon presentation of credentials, to:

a.     Monitor the progress of activities required under this Decree;

b.     Verify any data or information submitted to the United States in accordance with the terms of this Decree;

c.     Obtain documentary evidence, including photographs and similar data; and

d.     Assess Defendants' compliance with this Decree.

1   For the purpose of this Decree, the phrase "all reasonable times" shall mean between the

2   hours of 8:00 AM and 5:00 PM, Monday through Friday, excluding holidays.

3       48.   Until the termination of this Decree, Defendants shall retain, and shall instruct its

4   contractors and agents to preserve, all non-identical copies of all documents, records, or other

5   information (including documents, records, or other information in electronic form) in its or its

6   contractors', or agents' possession or control, or that come into its or its contractors' or agents'

7   possession or control, and that relate in any manner to Defendants' performance of its

8   obligations under this Decree.  This information-retention requirement shall apply regardless of

9   any contrary corporate or institutional policies or procedures.  At any time during this

10   information-retention period, upon request by the United States, Defendants shall provide copies

11   of any documents, records, or other information required to be maintained under this Paragraph,

12   subject to Defendants' right to assert a privilege as set forth in Paragraph 49.

13       49.   At the conclusion of the document-retention period provided in the preceding

14   Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of

15   any records or documents subject to the requirements of the preceding Paragraph, and, upon

16   request by the United States, Defendants shall deliver any such records or documents to EPA.

17   Defendants may assert that certain documents, records, or other information are privileged under

18   the attorney-client privilege or any other privilege recognized by Washington state or federal

19   law.  If Defendants assert such a privilege, it shall provide the following:  (1) the title of the

20   document, record, or information; (2) the date of the document, record, or information; (3) the

21   name and title of each author of the document, record, or information;  (4) the name and title of

22   each addressee and recipient; (5) a description of the subject of the document, record, or

23   information; and (6) the privilege asserted by Defendants.  However, no document, records, data,

24   or other information created or generated as required by this Decree shall be withheld on grounds

25   of privilege.

50.     This Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits.

## XII.  FAILURE OF COMPLIANCE

51.     Notwithstanding the United States' review and approval of any documents submitted to it by Defendants pursuant to this Decree, Defendants shall remain solely responsible for compliance with the terms of the CAA, its implementing regulations, and this Decree.

## XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

52.     This Decree resolves, and the United States covenants not to sue Defendants for, the civil claims of the United States for the violations alleged in the Complaint in this action through the date of lodging of this Consent Decree.  This Consent Decree's resolution of the United States' claims, and the United States' corresponding covenant not to sue, are conditioned upon Defendants' satisfactory compliance with the requirements of this Consent Decree.

53.      The United States reserves all legal and equitable remedies available to enforce the provisions of this Decree.  This Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA or its implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 52.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendants' Facilities, whether related to the violations addressed in this Decree or otherwise.

54.     This Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States

does not, by its consent to the entry of this Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Decree will result in compliance with provisions of the CAA, including 42 U.S.C. § 7671g and the implementing regulations at 40 C.F.R. Part 82, Subparts A and F or with any other provisions of federal, state, or local laws, regulations, or permits.

55.     This Decree does not limit or affect the rights of Defendants or of the United States against any third parties not party to this Decree, nor does it limit or otherwise affect the rights of third parties not party to this Decree, against Defendants, except as otherwise provided by law.

56.     This Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree.

## XIV.  COSTS

57.     Each Party shall bear its own costs associated with this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants brought in accordance with Sections IV (Civil Penalty) and VIII (Stipulated Penalties) herein.

## XV.  NOTICES

58.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Ben Franklin Station
Box 7611
Washington, DC 20044-7611

Shirin Venus

U.S. Environmental Protection Agency, Region 10
Office of Regional Counsel
1200 Sixth Ave, Suite 900
Mail Stop ORC-158
Seattle, WA 98101


Katie McClintock
U.S. Environmental Protection Agency, Region 10
Office of Compliance and Enforcement
1200 Sixth Ave, Suite 900
Mail Stop OCE-127
Seattle, WA 98101
McClintock.Katie@epa.gov

To Defendants:

Matthew D. Latimer
2025 First Avenue
Suite 900
Seattle, Washington 98121
matthew.latimer@americanseafoods.com

Thomas B. Johnston
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC  20006
tjohnston@mckennalong.com

59.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

60.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Decree or by mutual agreement of the Parties in writing.

## XVI. EFFECTIVE DATE

61.     The Effective Date of this Decree shall be the date upon which this Decree is entered by the Court or a motion to enter this Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVII. RETENTION OF JURISDICTION

62.     The Court shall retain jurisdiction over this case until termination of this Decree, for the purpose of enabling any of the Parties to apply to the Court for such further order,

1    direction, or relief as may be necessary or appropriate for the construction or modification of this

2    Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in

3    accordance with Section X of this Decree (Dispute Resolution).

### XVIII. MODIFICATION

5    63.    The terms of this Decree may be modified only by a subsequent written

6    agreement signed by all of the parties.  Where the modification constitutes a material change to

7    this Decree, it shall be effective only upon approval by the Court.

8    64.    Any disputes concerning modification of this Decree shall be resolved pursuant to

9    Section X of this Decree (Dispute Resolution), provided, however, that, instead of the burden of

10   proof provided by Section X, the Party seeking the modification in any such dispute bears the

11   burden of demonstrating that it is entitled to the requested modification in accordance with

12   Federal Rule of Civil Procedure 60(b).

### XIX. TERMINATION

14   65.    After Defendants have satisfactorily complied with all requirements of this

15   Decree, including reporting requirements required under Section VII and has paid the civil

16   penalty and any accrued Stipulated Penalties as required by this Decree, Defendants may serve

17   upon the United States a Request for Termination, stating that Defendants have satisfied those

18   requirements, together with all necessary supporting documentation.

19   66.    Following receipt by the United States of Defendants' Request for Termination,

20   the Parties shall confer informally concerning the Request and any disagreement that the Parties

21   may have as to whether Defendants have satisfactorily complied with the requirements for

22   termination of this Decree.  If the United States agrees that the Decree may be terminated, the

23   Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.  The

24   United States shall not unreasonably withhold its agreement to terminate this Decree.

25   67.    If the United States does not agree that the Decree may be terminated, Defendants

26   may invoke Dispute Resolution under Section X of this Decree.  However, Defendants shall not

seek Dispute Resolution of any dispute regarding termination until 60 Days after service of its

Request for Termination.

## XX. PUBLIC PARTICIPATION

68.     This Decree shall be lodged with the Court for a period of not less than 30 Days

for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves

the right to withdraw or withhold its consent if the comments regarding this Decree disclose facts

or considerations indicating that this Decree is inappropriate, improper, or inadequate.

Defendants consent to entry of this Decree without further notice and agree not to withdraw from

or oppose entry of this Decree by the Court or to challenge any provision of this Decree, unless

the United States has notified Defendants in writing that it no longer supports entry of this

Decree.

## XXI. SIGNATORIES/SERVICE

69.     Each undersigned representative of Defendants, and the Assistant Attorney

General of the Environment and Natural Resources Division of the Department of Justice,

certifies that he or she is fully authorized to enter into the terms and conditions of this Decree

and to execute and legally bind the Party he or she represents to this document.

70.     This Decree may be signed in counterparts, and its validity shall not be challenged

on that basis.  Defendants agree to accept service of process by mail with respect to all matters

arising under or relating to this Decree and to waive the formal service requirements set forth in

Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this

Court including, but not limited to, service of a summons.

## XXII.  INTEGRATION

71.     This Decree and attachments constitute the final, complete, and exclusive

agreement and understanding among the Parties with respect to the settlement embodied in the

Decree and supersedes all prior agreements and understandings, whether oral or written,

concerning the settlement embodied herein.  Other than deliverables that are subsequently

submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIII.  FINAL JUDGMENT

72.     Upon approval and entry of this Decree by the Court, this Decree shall constitute a final judgment of the Court as to the United States and Defendants.

Dated and entered this _____ day of _____, 2012.

_____
UNITED STATES DISTRICT JUDGE
Western District of Washington

THE UNDERSIGNED PARTIES enter into this Decree in the matter of *United States v. American Seafoods Company LLC and Pacific Longline Company LLC*, Civil Action No. _____ .

FOR PLAINTIFF UNITED STATES OF AMERICA:

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530

JENNY DURKAN
United States Attorney
Western District of Washington

Date: **6-4-12**

ELLEN MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611

SEAN CARMAN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
(202) 514-2746

1
2
3
4
5   ]

6

7

8

9
10
11
12
13
14   Date: 5·11·12

ALLYN L. STERN
Regional Counsel
U.S. Environmental Protection Agency
Office of Regional Counsel
Region 10
1200 Sixth Avenue
Seattle, Washington  98101

22
23

Date:   5|8|12

SHIRIN VENUS
24   Assistant Regional Counsel
U.S. Environmental Protection Agency
25   Region 10
1200 Sixth Ave.
26   Seattle, WA 98101

27

28

29

30

31

32

1   FOR DEFENDANTS AMERICAN SEAFOODS COMPANY LLC AND PACIFIC LONGLINE
2   COMPANY LLC:

3

Date: May 2, 2012        _____
4                        MATTHEW D. LATIMER
5                        Chief Legal Officer and General Counsel
6                        American Seafoods Group LLC, sole member of American Seafoods
7                        Company LLC
8                        2025 First Avenue, Suite 900
9                        Seattle, Washington 98121
10
11
12
Date: May 2, 2012        _____
13                       MATTHEW D. LATIMER
14                       Chief Legal Officer and General Counsel
15                       American Seafoods Group LLC, sole member of Pacific Longline
16                       Company LLC
17                       2025 First Avenue, Suite 900
18                       Seattle, Washington 98121
19
20

APPENDIX 1:

COMPREHENSIVE INSPECTION, LEAK DETECTION AND REPAIR PLAN

1. **Affected Vessels:**  The following vessels are subject to the requirements of this Comprehensive Inspection, Leak Detection and Repair Plan (CILDRP), unless a vessel's main refrigeration system has been converted to use a Non-ODS refrigerant prior to the deadline for the implementation of this plan: Northern Jaeger, American Dynasty, American Triumph, Ocean Rover, and Katie Ann.

2. **Certified Technicians:** Defendant American Seafoods Company LLC (American Seafoods) shall employ only appropriately certified technicians to perform the inspection, evacuation, repair or follow-up leak repair verification work required under this CILDRP when the regulations at 40 C.F.R. Part 82 would require certification to perform such activities.

3. **Required Inspections:**  American Seafoods will conduct a comprehensive leak inspection for R-22 refrigerant leaks from the main refrigeration systems (including the associated piping and equipment) aboard each of the Affected Vessels.

4. **Prior Notice to EPA:**  American Seafoods will provide EPA Region 10 (EPA) with prior written notice of the exact date of the comprehensive leak inspections at least 48 hours before the inspection will begin in order to afford EPA an opportunity to observe the inspection.

   Notice to EPA regarding performance under this Comprehensive Inspection, Leak Detection and Repair Plan shall be provided by American Seafoods via email to: Katie McClintock, EPA Region 10 Compliance Officer, mcclintock.katie@epa.gov.

5. **Inspection Technique:**  Inspectors acting on behalf of American Seafoods will use either halide torch detectors or electronic refrigerant leak detection devices to check for the presence of R-22 in throughout the areas of each Affected Vessel where there are components of the main refrigeration systems.  During the inspections, operators will maintain normal operating pressure of R-22 in the main refrigeration plan being inspected for leaks.  Whenever a leak is detected, inspectors will label the leak for repair. Inspectors will also record the detection and location of the leak in the vessel log book. At the completion of the leak inspection process, the vessel operators will pull R-22 out of the plate freezers and cargo holds to store in the vessel's low pressure receiver, in accordance with American Seafoods' standard procedures during lay-up periods.

6. **Repairs:**  If an R-22 leak is detected during the halide torch/ electronic detector inspections described in Paragraph 5, American Seafoods will repair the leak in accordance with the repair deadlines provided under 40 C.F.R. Part 82.156.  The repair process will involve isolation of the leaking component and evacuation of the R-22 to the levels specified in 40 C.F.R. Part 82 regulations, then repair or replacement of the leaking component.

7. **Leak Repair Verification Procedures:**  When leaks are found during a Required Inspection and repaired in accordance with Paragraph 6, American Seafoods will charge the previously leaking component with nitrogen gas at 142 psi (10 bar).  This exceeds normal operating pressure.  American Seafoods will conduct follow-up leak repair verification testing.  The default method for the follow-up leak repair verification test shall be soaping the previously leaking component and watching for bubbles, and if no leaks are detected by that method, by listening for audible leaks.  American Seafoods reserves the right to use an alternative verification testing method that meets sound professional judgment, including other methods listed in the 1995 EPA/CMA "Compliance Guidance for Industrial Process Refrigeration Leak Repair Regulations Under Section 608 of the Clean Air Act," at page E-3.

American Seafoods will normally have a different certified technician conduct a second leak-repair verification test to confirm that the leak has been fully repaired.  American Seafoods anticipates that this test will be conducted immediately following the initial leak repair verification test.  If the second leak-repair verification test confirms system integrity, American Seafoods will vacuum the system to remove nitrogen and humidity.

When the repaired portion of a refrigeration system is recharged with R-22 for the following fishing season, once the system reaches normal operational pressure, American Seafoods will conduct a third follow-up verification test using a halide torch or electronic leak detector.  This verification may be done while the vessel is underway.

8. **Reporting:**  Whether or not EPA is present to observe the leak inspections and leak-repair verification testing required by this CILDRP, American Seafoods shall submit to EPA a report on the leak inspection and repair activities for each Affected Vessel.  Each report shall include: (1) a list of each leak detected, including its location and the date detected, (2) a description of how each detected leak was repaired and the date it was repaired, and (3) descriptions of the dates, types, and results of the initial and all follow-up repair verification testing.  The Report shall be submitted to EPA no later than 60 days after the vessel returns to fishing.  If, for any reason, an Affected Vessel does not return to fishing within 120 days after the initial leak-repair verification test takes place or should have taken place pursuant to this CILDRP, then American Seafoods will submit a

report to EPA that provides the information described in the paragraph as well as an explanation of why the vessel has not returned to normal operating conditions allowing completion of the third follow-up verification test.